# THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA

| | |
|---|---|
| SEAN SHEFFLER, TY BAUGH, BELINDA GOSS, and TRAVIS ROGERS,<br><br>on behalf of themselves and all others similarly situated,<br><br>  Plaintiffs,<br><br>v.<br><br>AMERICOLD REALTY TRUST, a Maryland corporation,<br><br>  Defendant. | Case No.: 1:21-cv-01075-TCB<br><br>**AMENDED CLASS ACTION COMPLAINT**<br><br>DEMAND FOR JURY TRIAL |

Plaintiffs Sean Sheffler, Ty Baugh, Belinda Goss, and Travis Rogers ("Plaintiffs") bring this Amended Class Action Complaint against Americold Realty Trust ("Americold" or "Defendant"), individually and on behalf of all others similarly situated ("Class Members"), and allege, upon personal knowledge as to their own actions and their counsels' investigations, and upon information and belief as to all other matters, as follows:

## I. INTRODUCTION

1. Plaintiffs bring this class action against Defendant for its failure to properly secure and safeguard personal identifiable information that Defendant required from its current and former employees as a condition of employment, including names, Social Security numbers, dates of birth, government-issued ID numbers, financial account numbers, credit/debit card numbers, passwords or login

credentials, digital signatures, mother's maiden names, birth certificates, biometric information, and/or medical/health insurance information (collectively, "personal identifiable information" or "PII").

2.      According to its website, for almost 120 years, Defendant "has been the leader in providing technology-based engineered solutions for the temperature-controlled supply chain industry."[1]  Defendant employs "nearly 13,000 Associates."[2]

3.      On or before November 16, 2020, Defendant learned that a breach of Defendant's computer network had occurred and that it involved ransomware (the "Data Breach").

4.      Defendant determined that the Data Breach involved unauthorized activity on its network between October 29, 2020 and November 16, 2020, including unauthorized access to files, located on Defendant's servers, which contained information about more than 141,000 current or former employees of Defendant.

5.      On or around March 4, 2021, more than three months after it learned of the Data Breach, Defendant began notifying various states Attorneys General of the Data Breach.

6.      On or around March 4, 2021, more than three months after it learned of

---

[1] *See* https://www.americold.com/ (last visited Mar. 12, 2021).

[2] *See* https://www.americold.com/about-us/sustainability (last visited Mar. 12, 2021).

the Data Breach, Defendant began notifying Plaintiffs and Class Members of the Data Breach.

7.     By obtaining, collecting, using, and deriving a benefit from the PII of Plaintiffs and Class Members, Defendant assumed legal and equitable duties to those individuals to protect and safeguard that information from unauthorized access and intrusion.  Defendant admits that the unencrypted PII exposed to "unauthorized activity" included names, Social Security numbers, dates of birth, government-issued ID numbers, financial account numbers, credit/debit card numbers, passwords or login credentials, digital signatures, mother's maiden names, birth certificates, biometric information, and/or medical/health insurance information.

8.     The exposed PII of Plaintiffs and Class Members can be sold on the dark web.  Hackers can access and then offer for sale the unencrypted, unredacted PII to criminals.  Plaintiffs and Class Members now face a lifetime risk of identity theft, which is heightened here by the loss of Social Security numbers.

9.     This PII was compromised due to Defendant's negligent and/or careless acts and omissions and the failure to protect the PII of Plaintiffs and Class Members. In addition to Defendant's failure to prevent the Data Breach, after discovering the breach, Defendant waited several months to report it to the states' Attorneys General and affected individuals.  Defendant has also purposefully maintained secret the specific vulnerabilities and root causes of the breach and has not informed Plaintiffs

and Class Members of that information.

10.    As a result of this delayed response, Plaintiffs and Class Members had no idea their PII had been compromised, and that they were, and continue to be, at significant risk of identity theft and various other forms of personal, social, and financial harm. The risk will remain for their respective lifetimes.

11.    Plaintiffs brings this action on behalf of all persons whose PII was compromised as a result of Defendant's failure to: (i) adequately protect the PII of Plaintiffs and Class Members; (ii) warn Plaintiffs and Class Members of Defendant's inadequate information security practices; and (iii) effectively secure hardware containing protected PII using reasonable and effective security procedures free of vulnerabilities and incidents. Defendant's conduct amounts to negligence and violates federal and state statutes.

12.    Plaintiffs and Class Members have suffered injury as a result of Defendant's conduct. These injuries include: (i) lost or diminished value of PII; (ii) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their PII; (iii) lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach, including but not limited to lost time, and (iv) the continued and certainly increased risk to their PII, which: (a) remains unencrypted and available for unauthorized third parties to access and abuse; and (b) may remain backed up in

Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the PII.

13.     Defendant disregarded the rights of Plaintiffs and Class Members by intentionally, willfully, recklessly, or negligently failing to take and implement adequate and reasonable measures to ensure that the PII of Plaintiffs and Class Members was safeguarded, failing to take available steps to prevent an unauthorized disclosure of data, and failing to follow applicable, required and appropriate protocols, policies and procedures regarding the encryption of data, even for internal use. As the result, the PII of Plaintiffs and Class Members was compromised through disclosure to an unknown and unauthorized third party. Plaintiffs and Class Members have a continuing interest in ensuring that their information is and remains safe, and they should be entitled to injunctive and other equitable relief.

## II. PARTIES

14.     Plaintiff Sean Sheffler ("Sheffler") is a Citizen of Ohio residing in Defiance County, Ohio.

15.     Plaintiff Ty Baugh ("Baugh") is a Citizen of Iowa residing in Scott County, Iowa.

16.     Plaintiff Belinda Goss ("Goss") is a Citizen of Georgia residing in Cobb County, Georgia.

17.     Plaintiff Travis Rogers ("Rogers") is a citizen of Illinois residing in

Cook County, Illinois.

18.    Defendant Americold Realty Trust is a corporation organized under the laws of Maryland, headquartered at 10 Glenlake Parkway, South Tower, Suite 600, Atlanta, Georgia, with its principal place of business in Atlanta, Georgia.

19.    The true names and capacities of persons or entities, whether individual, corporate, associate, or otherwise, who may be responsible for some of the claims alleged herein are currently unknown to Plaintiffs.  Plaintiffs will seek leave of court to amend this complaint to reflect the true names and capacities of such other responsible parties when their identities become known.

20.    All of Plaintiffs' claims stated herein are asserted against Defendant and any of its owners, predecessors, successors, subsidiaries, agents and/or assigns.

### III. JURISDICTION AND VENUE

21.    This Court has subject matter and diversity jurisdiction over this action under 28 U.S.C. § 1332(d) because this is a class action wherein the amount of controversy exceeds the sum or value of $5 million, exclusive of interest and costs, there are more than 100 members in the proposed class, and at least one Class Member is a citizen of a state different from Defendant to establish minimal diversity.

22.    The Northern District of Georgia has personal jurisdiction over Defendant named in this action because Defendant and/or its parents or affiliates are

headquartered in this District and Defendant conduct substantial business in Georgia and this District through its headquarters, offices, parents, and affiliates.

23.    Venue is proper in this District under 28 U.S.C. §1391(b) because Defendant and/or its parents or affiliates are headquartered in this District and a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District.

## IV. FACTUAL ALLEGATIONS

### *Background*

24.    According to Defendant's website, "[f]or almost 120 years, [Defendant] has been the leader in providing technology-based engineered solutions for the temperature-controlled supply chain industry."[3]  Defendant employs "nearly 17,000  dedicated associates."[4]

25.    Plaintiffs and Class Members employed by Defendant were required to provide Defendant sensitive and confidential information for themselves and their beneficiaries and dependents, including names, Social Security numbers, dates of birth, and other personal identifiable information, which is static, does not change, and can be used to commit myriad financial crimes.

---

[3] *See* https://www.americold.com/ (last visited June 17, 2021).

[4] *See* 2020 Environmental, Social, and Governance Report at 19, *available at* https://f.hubspotusercontent30.net/hubfs/483539/FINAL%20Sustainability_Report _2020.pdf (last visited June 17, 2021).

26.     Plaintiffs and Class Members, as current and former employees and their beneficiaries and dependents, relied on this sophisticated Defendant to keep their PII confidential and securely maintained, to use this information for business purposes only, and to make only authorized disclosures of this information. Plaintiffs and Class Members demand security to safeguard their PII.

27.     Defendant had a duty to adopt reasonable measures to protect the PII of Plaintiffs and Class Members from involuntary disclosure to third parties.

### The Data Breach

28.     On or about March 4, 2021, Defendant sent Plaintiffs and other Class Members a *Notice of Data Breach*.[5]  Defendant informed Plaintiffs and other Class Members that:

**What Happened**

On November 16, 2020, we determined that our computer network was affected by a data security incident.  We immediately began an investigation to assess the incident's scope and engaged a third-party cybersecurity firm to assist with that investigation. We preemptively shut down our systems to contain the incident and then undertook a secure, managed restoration. In addition, we promptly notified law enforcement and have been cooperating with their investigation of the incident.

**What Information Was Involved**

Based on the investigation, some of your personal information was in files that may have been accessed

---

[5] Exhibit 1 (*Notice of Data Breach* sent to Plaintiff Sheffler).

without authorization. Depending on the document(s), this information may have included your name and one or more of the following: social security number and date of birth.

**What We Are Doing**
We preemptively shut down our systems to contain the incident and then undertook a secure, managed restoration. We also engaged a third-party cybersecurity firm to assist with our review and notified law enforcement and continue to cooperate with them. We have taken steps to further strengthen and enhance the security of systems in our network, including updating administrative and technical safeguards.[6]

29.     On or about March 4, 2021, Defendant notified various state Attorneys General, including Maine's Attorney General Frey, of the Data Breach.  Defendant also provided the Attorneys General with "sample" notices of the Data Breach that suggest the information exposed in the Data Breach is not limited to names, Social Security numbers, and dates of birth, but may also include government-issued ID numbers, financial account numbers, credit/debit card numbers, passwords or login credentials, digital signatures, mother's maiden names, birth certificates, biometric information, and/or medical/health insurance information.[7]

30.     Defendant admitted in the *Notice of Data Breach*, the letters to the Attorneys General, and the "sample" notices of the Data Breach that unauthorized

---

[6] *Id.* at 1.

[7] Exhibit 2 (letter from Defendant to Maine Attorney General); Exhibit 3 (sample *Notice of Data Breach*).

third persons accessed files that contained sensitive information about Defendant's current and former employees and their beneficiaries and dependents, including names, Social Security numbers, and dates of birth, and potentially including government-issued ID numbers, financial account numbers, credit/debit card numbers, passwords or login credentials, digital signatures, mother's maiden names, birth certificates, biometric information, and/or medical/health insurance information.

31.   In response to the Data Breach, Defendant claims that "[w]e preemptively shut down our systems to contain the incident and then undertook a secure, managed restoration. We also engaged a third-party cybersecurity firm to assist with our review and notified law enforcement and continue to cooperate with them. We have taken steps to further strengthen and enhance the security of systems in our network, including updating administrative and technical safeguards."[8] However, the details of the root cause of the Data Breach, the vulnerabilities exploited, and the remedial measures undertaken to ensure a breach does not occur again have not been shared with regulators or Plaintiffs and Class Members, who retain a vested interest in ensuring that their information remains protected.

32.   The unencrypted PII of Plaintiffs and Class Members may end up for sale on the dark web, or simply fall into the hands of companies that will use the

_____

[8] Exhibit 1.

detailed PII for targeted marketing without the approval of Plaintiffs and Class Members.  Unauthorized individuals can easily access the PII of Plaintiffs and Class Members.

33.    Defendant did not use reasonable security procedures and practices appropriate to the nature of the sensitive, unencrypted information it was maintaining for Plaintiffs and Class Members, causing the exposure of PII for approximately 140,000 individuals.

34.    As explained by the Federal Bureau of Investigation, "[p]revention is the most effective defense against ransomware and it is critical to take precautions for protection."[9]

35.    To prevent and detect ransomware attacks, including the ransomware attack that resulted in the Data Breach, Defendant could and should have implemented, as recommended by the United States Government, the following measures:

- Implement an awareness and training program.  Because end users are targets, employees and individuals should be aware of the threat of ransomware and how it is delivered.

- Enable strong spam filters to prevent phishing emails from reaching the end users and authenticate inbound email using technologies like Sender Policy Framework (SPF), Domain Message Authentication Reporting and Conformance (DMARC), and DomainKeys Identified Mail (DKIM) to

---

[9] *See* How to Protect Your Networks from RANSOMWARE, at 3, *available at* https://www.fbi.gov/file-repository/ransomware-prevention-and-response-for-cisos.pdf/view (last visited Mar. 15, 2021).

prevent email spoofing.

- Scan all incoming and outgoing emails to detect threats and filter executable files from reaching end users.

- Configure firewalls to block access to known malicious IP addresses.

- Patch operating systems, software, and firmware on devices. Consider using a centralized patch management system.

- Set anti-virus and anti-malware programs to conduct regular scans automatically.

- Manage the use of privileged accounts based on the principle of least privilege: no users should be assigned administrative access unless absolutely needed; and those with a need for administrator accounts should only use them when necessary.

- Configure access controls—including file, directory, and network share permissions—with least privilege in mind. If a user only needs to read specific files, the user should not have write access to those files, directories, or shares.

- Disable macro scripts from office files transmitted via email. Consider using Office Viewer software to open Microsoft Office files transmitted via email instead of full office suite applications.

- Implement Software Restriction Policies (SRP) or other controls to prevent programs from executing from common ransomware locations, such as temporary folders supporting popular Internet browsers or compression/decompression programs, including the AppData/LocalAppData folder.

- Consider disabling Remote Desktop protocol (RDP) if it is not being used.

- Use application whitelisting, which only allows systems to execute programs known and permitted by security policy.

- Execute operating system environments or specific programs in a virtualized environment.

- Categorize data based on organizational value and implement physical

and logical separation of networks and data for different organizational units.[10]

36.    To prevent and detect ransomware attacks, including the ransomware attack that resulted in the Data Breach, Defendant could and should have implemented, as recommended by the United States Cybersecurity & Infrastructure Security Agency, the following measures:

- **Update and patch your computer**.  Ensure your applications and operating systems (OSs) have been updated with the latest patches. Vulnerable applications and OSs are the target of most ransomware attacks….

- **Use caution with links and when entering website addresses**.  Be careful when clicking directly on links in emails, even if the sender appears to be someone you know. Attempt to independently verify website addresses (e.g., contact your organization's helpdesk, search the internet for the sender organization's website or the topic mentioned in the email). Pay attention to the website addresses you click on, as well as those you enter yourself. Malicious website addresses often appear almost identical to legitimate sites, often using a slight variation in spelling or a different domain (e.g., .com instead of .net)….

- **Open email attachments with caution**. Be wary of opening email attachments, even from senders you think you know, particularly when attachments are compressed files or ZIP files.

- **Keep your personal information safe**.  Check a website's security to ensure the information you submit is encrypted before you provide it….

- **Verify email senders**.  If you are unsure whether or not an email is legitimate, try to verify the email's legitimacy by contacting the sender directly. Do not click on any links in the email. If possible, use a previous (legitimate) email to ensure the contact information you have for the sender is authentic before you contact them.

---

[10] *Id.* at 3-4.

- **Inform yourself**.  Keep yourself informed about recent cybersecurity threats and up to date on ransomware techniques. You can find information about known phishing attacks on the Anti-Phishing Working Group website. You may also want to sign up for CISA product notifications, which will alert you when a new Alert, Analysis Report, Bulletin, Current Activity, or Tip has been published.

- **Use and maintain preventative software programs**. Install antivirus software, firewalls, and email filters—and keep them updated—to reduce malicious network traffic….[11]

37.    To prevent and detect ransomware attacks, including the ransomware attack that resulted in the Data Breach, Defendant could and should have implemented, as recommended by the Microsoft Threat Protection Intelligence Team, the following measures:

**Secure internet-facing assets**

-              Apply latest security updates
-              Use threat and vulnerability management
-              Perform regular audit; remove privileged credentials;

**Thoroughly investigate and remediate alerts**

-        Prioritize and treat commodity malware infections as potential full compromise;

**Include IT Pros in security discussions**

-        Ensure collaboration among [security operations], [security admins], and [information technology] admins to configure servers and other endpoints securely;

---

[11] *See* Security Tip (ST19-001) Protecting Against Ransomware (original release date Apr. 11, 2019), *available at* https://us-cert.cisa.gov/ncas/tips/ST19-001 (last visited Mar. 15, 2021).

**Build credential hygiene**

- Use [multifactor authentication] or [network level authentication] and use strong, randomized, just-in-time local admin passwords

**Apply principle of least-privilege**

- Monitor for adversarial activities
- Hunt for brute force attempts
- Monitor for cleanup of Event Logs
- Analyze logon events

**Harden infrastructure**

- Use Windows Defender Firewall
- Enable tamper protection
- Enable cloud-delivered protection
- Turn on attack surface reduction rules and [Antimalware Scan Interface] for Office [Visual Basic for Applications].[12]

38.   Given that Defendant was storing the PII of approximately 140,000 individuals, collected since at least 2000, Defendant could and should have implemented all of the above measures to prevent and detect ransomware attacks.

39.   The occurrence of the Data Breach indicates that Defendant failed to adequately implement one or more of the above measures to prevent ransomware attacks, resulting in the Data Breach and the exposure of the PII of approximately 140,000 individuals, including Plaintiffs and Class Members.

***Defendant Acquires, Collects, and Stores the PII of Plaintiffs and Class***

---

[12] *See* Human-operated ransomware attacks: A preventable disaster (Mar 5, 2020), *available at* https://www.microsoft.com/security/blog/2020/03/05/human-operated-ransomware-attacks-a-preventable-disaster/ (last visited Mar. 15, 2021).

***Members.***

40.     Defendant acquired, collected, and stored the PII of Plaintiffs and Class Members at least from 2000 to 2020.

41.     As a condition of maintaining employment with Defendant, Defendant requires that its employees entrust Defendant with highly confidential PII.

42.     By obtaining, collecting, and storing the PII of Plaintiffs and Class Members, Defendant assumed legal and equitable duties and knew or should have known that it was responsible for protecting the PII from disclosure.

43.     Plaintiffs and Class Members have taken reasonable steps to maintain the confidentiality of their PII and relied on Defendant to keep their PII confidential and securely maintained, to use this information for business purposes only, and to make only authorized disclosures of this information.

### *Securing PII and Preventing Breaches*

44.     Defendant could have prevented this Data Breach by properly securing and encrypting the files and file servers containing the PII of Plaintiffs and Class Members.   Alternatively, Defendant could have destroyed the data, especially decade-old data from former employees and their beneficiaries and dependents.

45.     Defendant's negligence in safeguarding the PII of Plaintiffs and Class Members is exacerbated by the repeated warnings and alerts directed to protecting and securing sensitive data.

16

46.     Despite the prevalence of public announcements of data breach and data security compromises, Defendant failed to take appropriate steps to protect the PII of Plaintiffs and Class Members from being compromised.

47.     The Federal Trade Commission ("FTC") defines identity theft as "a fraud committed or attempted using the identifying information of another person without authority."[13] The FTC describes "identifying information" as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person," including, among other things, "[n]ame, Social Security number, date of birth, official State or government issued driver's license or identification number, alien registration number, government passport number, employer or taxpayer identification number."[14]

48.     The ramifications of Defendant's failure to keep secure the PII of Plaintiffs and Class Members are long lasting and severe. Once PII is stolen, particularly Social Security numbers, fraudulent use of that information and damage to victims may continue for years.

### *Value of Personal Identifiable Information*

49.     The PII of individuals remains of high value to criminals, as evidenced by the prices they will pay through the dark web. Numerous sources cite dark web

---

[13] 17 C.F.R. § 248.201 (2013).

[14] *Id.*

pricing for stolen identity credentials. For example, personal information can be sold at a price ranging from \$40 to \$200, and bank details have a price range of \$50 to \$200.[15] Experian reports that a stolen credit or debit card number can sell for \$5 to \$110 on the dark web.[16] Criminals can also purchase access to entire company data breaches from \$900 to \$4,500.[17]

50.     Social Security numbers, for example, are among the worst kind of personal information to have stolen because they may be put to a variety of fraudulent uses and are difficult for an individual to change. The Social Security Administration stresses that the loss of an individual's Social Security number, as is the case here, can lead to identity theft and extensive financial fraud:

> A dishonest person who has your Social Security number can use it to get other personal information about you. Identity thieves can use your number and your good credit to apply for more credit in your name. Then, they use the credit cards and don't pay the bills, it damages your credit. You may not find out that someone is using your number until you're turned down for credit, or you begin to get

---

[15] *Your personal data is for sale on the dark web. Here's how much it costs,* Digital Trends, Oct. 16, 2019, *available at*: https://www.digitaltrends.com/computing/personal-data-sold-on-the-dark-web-how-much-it-costs/ (last accessed Dec. 30, 2020).

[16] *Here's How Much Your Personal Information Is Selling for on the Dark Web*, Experian, Dec. 6, 2017, *available at*: https://www.experian.com/blogs/ask-experian/heres-how-much-your-personal-information-is-selling-for-on-the-dark-web/ (last accessed Dec. 29, 2020).

[17] *In the Dark*, VPNOverview, 2019, *available at*: https://vpnoverview.com/privacy/anonymous-browsing/in-the-dark/ (last accessedDec. 29, 2020).

calls from unknown creditors demanding payment for
items you never bought. Someone illegally using your
Social Security number and assuming your identity can
cause a lot of problems.[18]

51.    What is more, it is no easy task to change or cancel a stolen Social

Security number. An individual cannot obtain a new Social Security number without

significant paperwork and evidence of actual misuse. In other words, preventive

action to defend against the possibility of misuse of a Social Security number is not

permitted; an individual must show evidence of actual, ongoing fraud activity to

obtain a new number.

52.    Even then, a new Social Security number may not be effective.

According to Julie Ferguson of the Identity Theft Resource Center, "The credit

bureaus and banks are able to link the new number very quickly to the old number,

so all of that old bad information is quickly inherited into the new Social Security

number."[19]

53.    Based on the foregoing, the information compromised in the Data

Breach is significantly more valuable than the loss of, for example, credit card

---

[18] Social Security Administration, *Identity Theft and Your Social Security Number*,
*available at*: https://www.ssa.gov/pubs/EN-05-10064.pdf (last accessed Dec. 29,
2020).

[19] Bryan Naylor, *Victims of Social Security Number Theft Find It's Hard to Bounce
Back*,    NPR    (Feb.    9,    2015),    *available    at*:
http://www.npr.org/2015/02/09/384875839/data-stolen-by-anthem-s-hackers-has-
millionsworrying-about-identity-theft (last accessed Dec. 29, 2020).

information in a retailer data breach because, there, victims can cancel or close credit and debit card accounts.  The information compromised in this Data Breach is impossible to "close" and difficult, if not impossible, to change—Social Security number, name, and date of birth, and potentially government-issued ID number, mother's maiden name, birth certificate, and biometric information.

54.    This data demands a much higher price on the black market. Martin Walter, senior director at cybersecurity firm RedSeal, explained, "Compared to credit card information, personally identifiable information and Social Security numbers are worth more than 10x on the black market."[20]

55.    Among other forms of fraud, identity thieves may obtain driver's licenses, government benefits, medical services, and housing or even give false information to police.

56.    The fraudulent activity resulting from the Data Breach may not come to light for years.

57.    There may be a time lag between when harm occurs versus when it is discovered, and also between when PII is stolen and when it is used. According to the U.S. Government Accountability Office ("GAO"), which conducted a study

---

[20] Time Greene, *Anthem Hack: Personal Data Stolen Sells for 10x Price of Stolen Credit Card Numbers*, IT World, (Feb. 6, 2015), *available at*: https://www.networkworld.com/article/2880366/anthem-hack-personal-data-stolen-sells-for-10x-price-of-stolen-credit-card-numbers.html (last accessed Dec. 29, 2020).

regarding data breaches:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.[21]

58.    At all relevant times, Defendant knew, or reasonably should have known, of the importance of safeguarding the PII of Plaintiffs and Class Members, including Social Security numbers and dates of birth, and of the foreseeable consequences that would occur if Defendant's data security system was breached, including, specifically, the significant costs that would be imposed on Plaintiffs and Class Members as a result of a breach.

59.    Plaintiffs and Class Members now face years of constant surveillance of their financial and personal records, monitoring, and loss of rights. The Class is incurring and will continue to incur such damages in addition to any fraudulent use of their PII.

60.    Defendant was, or should have been, fully aware of the unique type and the significant volume of data on Defendant's file servers, amounting to potentially tens or hundreds of thousands of individuals' detailed, personal information and,

---

[21] *Report to Congressional Requesters*, GAO, at 29 (June 2007), *available at:* https://www.gao.gov/assets/gao-07-737.pdf (last accessed Mar. 15, 2021).

thus, the significant number of individuals who would be harmed by the exposure of the unencrypted data.

61.     To date, Defendant has offered Plaintiffs and Class Members only two years of identity theft detection through a single credit bureau, Experian. The offered service is inadequate to protect Plaintiffs and Class Members from the threats they face for years to come, particularly in light of the PII at issue here.

62.     The injuries to Plaintiffs and Class Members were directly and proximately caused by Defendant's failure to implement or maintain adequate data security measures for the PII of Plaintiffs and Class Members.

### *Plaintiff Sean Sheffler's Experience*

63.     In or around November 2019, Plaintiff Sheffler worked for Defendant or its subsidiary in Napoleon, Ohio.  As a condition of employment, Defendant required that he provide and/or entrust his PII, including his name, Social Security number, and date of birth.

64.     Plaintiff Sheffler received Defendant's Notice of Data Breach, dated March 4, 2021, on or about that date.  The notice stated that Plaintiff Sheffler's Social Security number and date of birth may have been exposed.

65.     By letter dated June 14, 2021, the Ohio Department of Job and Family Services – Office of Unemployment Insurance Operations informed Plaintiff Sheffler that a claim for Pandemic Unemployment Assistance had been filed in his

22

name.  Filing this claim required the entry of a Social Security number and date of birth.[22]

66.   As a result of the Data Breach notice, Plaintiff Sheffler spent time dealing with the consequences of the Data Breach, which includes time spent verifying the legitimacy of the Notice of Data Breach and self-monitoring his accounts. This time has been lost forever and cannot be recaptured.

67.   Additionally, Plaintiff Sheffler is very careful about sharing his sensitive PII. He has never knowingly transmitted unencrypted sensitive PII over the internet or any other unsecured source.

68.   Plaintiff Sheffler stores any documents containing his sensitive PII in a safe and secure location or destroys the documents. Moreover, he diligently chooses unique usernames and passwords for his various online accounts.

69.   Plaintiff Sheffler suffered actual injury in the form of damages to and diminution in the value of his PII—a form of intangible property that Plaintiff Sheffler entrusted to Defendant for the purpose of his employment, which was compromised in and as a result of the Data Breach.

70.   Plaintiff Sheffler suffered lost time, annoyance, interference, and inconvenience as a result of the Data Breach and has anxiety and increased concerns

---

[22] *See* Pandemic Unemployment Assistance (PUA) Step-by-Step Application Instructions at 6, *available at* https://jfs.ohio.gov/ouio/pdf/PUA-StepByStepApplicationInstructions.pdf (last visited June 17, 2021).

for the loss of his privacy.

71.    Plaintiff Sheffler has suffered imminent and impending injury arising from the substantially increased risk of fraud, identity theft, and misuse resulting from his PII, especially his Social Security number, in combination with his name and date of birth, being placed in the hands of unauthorized third parties and possibly criminals.

72.    Plaintiff Sheffler has a continuing interest in ensuring that his PII, which, upon information and belief, remains backed up in Defendant's possession, is protected and safeguarded from future breaches.

### *Plaintiff Ty Baugh's Experience*

73.    For approximately three weeks in or around May 2013, Plaintiff Baugh worked for Defendant or its subsidiary in Bettendorf, Iowa.  As a condition of employment, Defendant required that he provide and/or entrust his PII, including his name, Social Security number, date of birth, and medical/health insurance information.

74.    Plaintiff Baugh received Defendant's Notice of Data Breach, dated March 4, 2021, on or about that date.  The notice stated that Plaintiff Baugh's Social Security number, date of birth, and medical/health insurance information may have been exposed.

75.    As a result of the Data Breach notice, Plaintiff Baugh spent time dealing

with the consequences of the Data Breach, which includes time spent exploring credit monitoring and identity theft insurance options and signing up for the credit monitoring offered by Defendant. This time has been lost forever and cannot be recaptured.

76.    Additionally, Plaintiff Baugh is very careful about sharing his sensitive PII. He has never knowingly transmitted unencrypted sensitive PII over the internet or any other unsecured source.

77.    Plaintiff Baugh stores any documents containing his sensitive PII in a safe and secure location or destroys the documents. Moreover, he diligently chooses unique usernames and passwords for his various online accounts.

78.    Plaintiff Baugh suffered actual injury in the form of damages to and diminution in the value of his PII—a form of intangible property that Plaintiff Baugh entrusted to Defendant for the purpose of his employment, which was compromised in and as a result of the Data Breach.

79.    Plaintiff Baugh suffered lost time, annoyance, interference, and inconvenience as a result of the Data Breach and has anxiety and increased concerns for the loss of his privacy.

80.    Plaintiff Baugh has suffered imminent and impending injury arising from the substantially increased risk of fraud, identity theft, and misuse resulting from his PII, especially his Social Security number, in combination with his name

and date of birth, being placed in the hands of unauthorized third parties and possibly criminals.

81.   Plaintiff Baugh has a continuing interest in ensuring that his PII, which, upon information and belief, remains backed up in Defendant's possession, is protected and safeguarded from future breaches.

### *Plaintiff Belinda Goss' Experience*

82.   From approximately 2012 to 2014, Plaintiff Goss worked for Defendant or its subsidiary in Atlanta, Georgia.   As a condition of employment, Defendant required that she provide and/or entrust her PII, including her name, Social Security number, date of birth, and medical/health insurance information.

83.   Plaintiff Goss received Defendant's Notice of Data Breach, dated March 4, 2021, on or about that date.  The notice stated that Plaintiff Goss' Social Security number, date of birth, and medical/health insurance information may have been exposed.

84.   By letter dated April 7, 2021, the Internal Revenue Service informed Plaintiff Goss that "[s]omeone may have attempted to impersonate you by using your name and taxpayer identification number (TIN) to file a tax return.  If someone filed a federal tax return with your personal information without your consent, you may be a victim of identity theft."

85.   By letter dated April 15, 2021, the Georgia Department of Revenue

informed Plaintiff Goss that "another individual" may have filed a tax return for tax year 2020 using her Social Security number and that if this was done without her consent, she "may be a victim of Identity Theft."

86.     As a result of the Data Breach notice, Plaintiff Goss spent time dealing with the consequences of the Data Breach, which includes time spent exploring credit monitoring and identity theft insurance options and self-monitoring her accounts. This time has been lost forever and cannot be recaptured.

87.     Additionally, Plaintiff Goss is very careful about sharing her sensitive PII. She has never knowingly transmitted unencrypted sensitive PII over the internet or any other unsecured source.

88.     Plaintiff Goss stores any documents containing his PII in a safe and secure location or destroys the documents. Moreover, she diligently chooses unique usernames and passwords for his various online accounts.

89.     Plaintiff Goss suffered actual injury in the form of damages to and diminution in the value of her PII—a form of intangible property that Plaintiff Goss entrusted to Defendant for the purpose of her employment, which was compromised in and as a result of the Data Breach.

90.     Plaintiff Goss suffered lost time, annoyance, interference, and inconvenience as a result of the Data Breach and has anxiety and increased concerns for the loss of her privacy.

91.     Plaintiff Goss has suffered imminent and impending injury arising from the substantially increased risk of fraud, identity theft, and misuse resulting from her PII, especially her Social Security number, in combination with his name and date of birth, being placed in the hands of unauthorized third parties and possibly criminals.

92.     Plaintiff Goss has a continuing interest in ensuring that her PII, which, upon information and belief, remains backed up in Defendant's possession, is protected and safeguarded from future breaches.

### *Plaintiff Travis Rogers' Experience*

93.     In or around 2011, Plaintiff Rogers worked for Defendant or its subsidiary in East Dubuque, Illinois.  As a condition of employment, Defendant required that he provide and/or entrust his PII, including his name, Social Security number, and date of birth.

94.     Plaintiff Rogers received Defendant's Notice of Data Breach, dated March 4, 2021, on or about that date.  The notice stated that Plaintiff Rogers' Social Security number and date of birth may have been exposed.

95.     After the Data Breach, there was a credit inquiry indicating that someone applied for a credit card using Mr. Rogers' information.

96.     As a result of the Data Breach notice, Plaintiff Rogers spent time dealing with the consequences of the Data Breach, which includes time spent

exploring credit monitoring and identity theft insurance options and signing up for fraud alerts. This time has been lost forever and cannot be recaptured.

97.     Additionally, Plaintiff Rogers is very careful about sharing his sensitive PII. He has never knowingly transmitted unencrypted sensitive PII over the internet or any other unsecured source.

98.     Plaintiff Rogers stores any documents containing his sensitive PII in a safe and secure location or destroys the documents. Moreover, he diligently chooses unique usernames and passwords for his various online accounts.

99.     Plaintiff Rogers suffered actual injury in the form of damages to and diminution in the value of his PII—a form of intangible property that Plaintiff Rogers entrusted to Defendant for the purpose of his employment, which was compromised in and as a result of the Data Breach.

100.   Plaintiff Rogers suffered lost time, annoyance, interference, and inconvenience as a result of the Data Breach and has anxiety and increased concerns for the loss of his privacy.

101.   Plaintiff Rogers has suffered imminent and impending injury arising from the substantially increased risk of fraud, identity theft, and misuse resulting from his PII, especially his Social Security number, in combination with his name and date of birth, being placed in the hands of unauthorized third parties and possibly criminals.

29

102.   Plaintiff Rogers has a continuing interest in ensuring that his PII, which, upon information and belief, remains backed up in Defendant's possession, is protected and safeguarded from future breaches.

## V. CLASS ALLEGATIONS

103.   Plaintiffs bring this nationwide class action on behalf of themselves and on behalf of all others similarly situated pursuant to Rule 23(b)(2), 23(b)(3), and 23(c)(4) of the Federal Rules of Civil Procedure.

104.   The Nationwide Class that Plaintiffs seek to represent is defined as follows:

> All individuals whose PII was compromised in the data breach that is the subject of the Notice of Data Breach that Defendant sent to Plaintiffs and other Class Members on or around March 4, 2021 (the "Nationwide Class").

105.   Pursuant to Rule 23, and in the alternative to claims asserted on behalf of the Nationwide Class, Plaintiffs asserts claims on behalf of a separate subclass, defined as follows:

> All current and former employees of Defendant who had contracts related to PII that was compromised in the data breach that is the subject of the Notice of Data Breach that Defendant sent to Plaintiffs and other Class Members on or around March 4, 2021 (the "Employees Class").

106.   Excluded from the Classes are the following individuals and/or entities: Defendant and Defendant's parents, subsidiaries, affiliates, officers and directors, and any entity in which Defendant has a controlling interest; all individuals who

make a timely election to be excluded from this proceeding using the correct protocol for opting out; any and all federal, state or local governments, including but not limited to their departments, agencies, divisions, bureaus, boards, sections, groups, counsels and/or subdivisions; and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

107.   Plaintiffs reserve the right to modify or amend the definition of the proposed classes before the Court determines whether certification is appropriate.

108.   <u>Numerosity</u>, Fed. R. Civ. P. 23(a)(1): The Nationwide Class (the "Class") are so numerous that joinder of all members is impracticable. Defendant has identified thousands of current and former employees, and beneficiaries and dependents thereof, whose PII may have been improperly accessed in the Data Breach, and the Class is apparently identifiable within Defendant's records. Defendant advised Maine Attorney General Frey that the Data Breach affected 141,351 individuals.

109.   <u>Commonality</u>, Fed. R. Civ. P. 23(a)(2) and (b)(3): Questions of law and fact common to the Classes exist and predominate over any questions affecting only individual Class Members. These include:

  a. Whether and to what extent Defendant had a duty to protect the PII of Plaintiffs and Class Members;

  b. Whether Defendant had duties not to disclose the PII of Plaintiffs and

Class Members to unauthorized third parties;

c.  Whether Defendant had duties not to use the PII of Plaintiffs and Class Members for non-business purposes;

d.  Whether Defendant failed to adequately safeguard the PII of Plaintiffs and Class Members;

e.  Whether and when Defendant actually learned of the Data Breach;

f.  Whether Defendant adequately, promptly, and accurately informed Plaintiffs and Class Members that their PII had been compromised;

g.  Whether Defendant violated the law by failing to promptly notify Plaintiffs and Class Members that their PII had been compromised;

h.  Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

i.  Whether Defendant adequately addressed and fixed the vulnerabilities which permitted the Data Breach to occur;

j.  Whether Defendant engaged in unfair, unlawful, or deceptive practices by failing to safeguard the PII of Plaintiffs and Class Members;

k.  Whether Plaintiffs and Class Members are entitled to actual, consequential, and/or nominal damages as a result of Defendant's wrongful conduct;

32

l.  Whether Plaintiffs and Class Members are entitled to restitution as a result of Defendant's wrongful conduct; and

m. Whether Plaintiffs and Class Members are entitled to injunctive relief to redress the imminent and currently ongoing harm faced as a result of the Data Breach.

110.  <u>Typicality</u>, Fed. R. Civ. P. 23(a)(3): Plaintiffs' claims are typical of those of other Class Members because all had their PII compromised as a result of the Data Breach, due to Defendant's misfeasance.

111.  <u>Policies Generally Applicable to the Class</u>: This class action is also appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to the Class, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class Members and making final injunctive relief appropriate with respect to the Class as a whole.  Defendant's policies challenged herein apply to and affect Class Members uniformly and Plaintiffs' challenge of these policies hinges on Defendant's conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiffs.

112.  <u>Adequacy</u>, Fed. R. Civ. P. 23(a)(4): Plaintiffs will fairly and adequately represent and protect the interests of the Class Members in that they have no disabling conflicts of interest that would be antagonistic to those of the other Members of the Class.  Plaintiffs seek no relief that is antagonistic or adverse to the

Members of the Class and the infringement of the rights and the damages they have suffered are typical of other Class Members. Plaintiffs have retained counsel experienced in complex class action litigation, and Plaintiffs intend to prosecute this action vigorously.

113.   <u>Superiority and Manageability</u>, Fed. R. Civ. P. 23(b)(3): The class litigation is an appropriate method for fair and efficient adjudication of the claims involved. Class action treatment is superior to all other available methods for the fair and efficient adjudication of the controversy alleged herein; it will permit a large number of Class Members to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, and expense that hundreds of individual actions would require. Class action treatment will permit the adjudication of relatively modest claims by certain Class Members, who could not individually afford to litigate a complex claim against large corporations, like Defendant. Further, even for those Class Members who could afford to litigate such a claim, it would still be economically impractical and impose a burden on the courts.

114.   The nature of this action and the nature of laws available to Plaintiffs and Class Members make the use of the class action device a particularly efficient and appropriate procedure to afford relief to Plaintiffs and Class Members for the wrongs alleged because Defendant would necessarily gain an unconscionable

advantage since it would be able to exploit and overwhelm the limited resources of each individual Class Member with superior financial and legal resources; the costs of individual suits could unreasonably consume the amounts that would be recovered; proof of a common course of conduct to which Plaintiffs were exposed is representative of that experienced by the Class and will establish the right of each Class Member to recover on the cause of action alleged; and individual actions would create a risk of inconsistent results and would be unnecessary and duplicative of this litigation.

115.   The litigation of the claims brought herein is manageable.  Defendant's uniform conduct, the consistent provisions of the relevant laws, and the ascertainable identities of Class Members demonstrates that there would be no significant manageability problems with prosecuting this lawsuit as a class action.

116.   Adequate notice can be given to Class Members directly using information maintained in Defendant's records.

117.   Unless a Class-wide injunction is issued, Defendant may continue in its failure to properly secure the PII of Class Members, Defendant may continue to refuse to provide proper notification to Class Members regarding the Data Breach, and Defendant may continue to act unlawfully as set forth in this Complaint.

118.   Further, Defendant has acted or refused to act on grounds generally applicable to the Classes and, accordingly, final injunctive or corresponding

declaratory relief with regard to the Class Members as a whole is appropriate under Rule 23(b)(2) of the Federal Rules of Civil Procedure.

119.   Likewise, particular issues under Rule 23(c)(4) are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein. Such particular issues include, but are not limited to:

    a.  Whether Defendant owed a legal duty to Plaintiffs and Class Members to exercise due care in collecting, storing, using, and safeguarding their PII;

    b.  Whether Defendant breached a legal duty to Plaintiffs and Class Members to exercise due care in collecting, storing, using, and safeguarding their PII;

    c.  Whether Defendant failed to comply with its own policies and applicable laws, regulations, and industry standards relating to data security;

    d.  Whether an implied contract existed between Defendant on the one hand, and Plaintiffs and Class Members on the other, and the terms of that implied contract;

    e.  Whether Defendant breached the implied contract;

    f.  Whether Defendant adequately and accurately informed Plaintiffs

and Class Members that their PII had been compromised;

g.  Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

h.  Whether Defendant engaged in unfair, unlawful, or deceptive practices by failing to safeguard the PII of Plaintiffs and Class Members; and,

i.  Whether Class Members are entitled to actual, consequential, and/or nominal damages, and/or injunctive relief as a result of Defendant's wrongful conduct.

**COUNT I**
**NEGLIGENCE**
**(On Behalf of Plaintiffs and the Nationwide Class)**

120.  Plaintiffs and the Nationwide Class re-allege and incorporate by reference herein all of the allegations contained in paragraphs 1 through 119.

121.  As a condition of their employment with Defendant, Defendant's current and former employees were obligated to provide Defendant with certain PII, including their names, Social Security numbers, and dates of birth, and those of their beneficiaries and dependents.

122.  Plaintiffs and the Nationwide Class entrusted their PII to Defendant on the premise and with the understanding that Defendant would safeguard their

37

information, use their PII for business purposes only, and/or not disclose their PII to unauthorized third parties.

123.   Defendant has full knowledge of the sensitivity of the PII and the types of harm that Plaintiffs and the Nationwide Class could and would suffer if the PII were wrongfully disclosed.

124.   Defendant knew or reasonably should have known that the failure to exercise due care in the collecting, storing, and using of the PII of Plaintiffs and the Nationwide Class involved an unreasonable risk of harm to Plaintiffs and the Nationwide Class, even if the harm occurred through the criminal acts of a third party.

125.   Defendant had a duty to exercise reasonable care in safeguarding, securing, and protecting such information from being compromised, lost, stolen, misused, and/or disclosed to unauthorized parties. This duty includes, among other things, designing, maintaining, and testing Defendant's security protocols to ensure that the PII of Plaintiffs and the Nationwide Class in Defendant's possession was adequately secured and protected.

126.   Defendant also had a duty to exercise appropriate clearinghouse practices to remove former employees' PII, and that of their beneficiaries and dependents, it was no longer required to retain pursuant to regulations.

127.   Defendant also had a duty to have procedures in place to detect and

prevent the improper access and misuse of the PII of Plaintiffs and the Nationwide Class.

128.   Defendant's duty to use reasonable security measures arose as a result of the special relationship that existed between Defendant and Plaintiffs and the Nationwide Class.   That special relationship arose because Plaintiffs and the Nationwide Class entrusted Defendant with their confidential PII, a necessary part of employment with the company.

129.   Defendant was subject to an "independent duty," untethered to any contract between Defendant and Plaintiffs or the Nationwide Class.

130.   A breach of security, unauthorized access, and resulting injury to Plaintiffs and the Nationwide Class was reasonably foreseeable, particularly in light of Defendant's inadequate security practices.

131.   Plaintiffs and the Nationwide Class were the foreseeable and probable victims of any inadequate security practices and procedures.   Defendant knew or should have known of the inherent risks in collecting and storing the PII of Plaintiffs and the Nationwide Class, the critical importance of providing adequate security of that PII, and the necessity for encrypting PII stored on Defendant's systems.

132.   Defendant's own conduct created a foreseeable risk of harm to Plaintiffs and the Nationwide Class. Defendant's misconduct included, but was not limited to, its failure to take the steps and opportunities to prevent the Data Breach

39

as set forth herein.  Defendant's misconduct also included its decisions not to comply with industry standards for the safekeeping of the PII of Plaintiffs and the Nationwide Class, including basic encryption techniques freely available to Defendant.

133.   Plaintiffs and the Nationwide Class had no ability to protect their PII that was in, and possibly remains in, Defendant's possession.

134.   Defendant was in a position to protect against the harm suffered by Plaintiffs and the Nationwide Class as a result of the Data Breach.

135.   Defendant had and continues to have a duty to adequately disclose that the PII of Plaintiffs and the Nationwide Class within Defendant's possession might have been compromised, how it was compromised, and precisely the types of data that were compromised and when. Such notice was necessary to allow Plaintiffs and the Nationwide Class to take steps to prevent, mitigate, and repair any identity theft and the fraudulent use of their PII by third parties.

136.   Defendant had a duty to employ proper procedures to prevent the unauthorized dissemination of the PII of Plaintiffs and the Nationwide Class.

137.   Defendant has admitted that the PII of Plaintiffs and the Nationwide Class was wrongfully lost and disclosed to unauthorized third persons as a result of the Data Breach.

138.   Defendant, through its actions and/or omissions, unlawfully breached

its duties to Plaintiffs and the Nationwide Class by failing to implement industry protocols and exercise reasonable care in protecting and safeguarding the PII of Plaintiffs and the Nationwide Class during the time the PII was within Defendant's possession or control.

139.  Defendant improperly and inadequately safeguarded the PII of Plaintiffs and the Nationwide Class in deviation of standard industry rules, regulations, and practices at the time of the Data Breach.

140.  Defendant failed to heed industry warnings and alerts to provide adequate safeguards to protect the PII of Plaintiffs and the Nationwide Class in the face of increased risk of theft.

141.  Defendant, through its actions and/or omissions, unlawfully breached its duty to Plaintiffs and the Nationwide Class by failing to have appropriate procedures in place to detect and prevent dissemination of its current and former employees' PII, and that of their beneficiaries and dependents.

142.  Defendant breached its duty to exercise appropriate clearinghouse practices by failing to remove former employees' PII, and that of their beneficiaries and dependents, it was no longer required to retain pursuant to regulations.

143.  Defendant, through its actions and/or omissions, unlawfully breached its duty to adequately and timely disclose to Plaintiffs and the Nationwide Class the existence and scope of the Data Breach.

144.   But for Defendant's wrongful and negligent breach of duties owed to Plaintiffs and the Nationwide Class, the PII of Plaintiffs and the Nationwide Class would not have been compromised.

145.   There is a close causal connection between Defendant's failure to implement security measures to protect the PII of Plaintiffs and the Nationwide Class and the harm, or risk of imminent harm, suffered by Plaintiffs and the Nationwide Class.  The PII of Plaintiffs and the Nationwide Class was lost and accessed as the proximate result of Defendant's failure to exercise reasonable care in safeguarding such PII by adopting, implementing, and maintaining appropriate security measures.

146.   Additionally, Section 5 of the FTC Act prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Defendant, of failing to use reasonable measures to protect PII. The FTC publications and orders described above also form part of the basis of Defendant's duty in this regard.

147.   Defendant violated Section 5 of the FTC Act by failing to use reasonable measures to protect PII and not complying with applicable industry standards, as described in detail herein. Defendant's conduct was particularly unreasonable given the nature and amount of PII it obtained and stored and the foreseeable consequences of the immense damages that would result to Plaintiffs and the Nationwide Class.

148.   Defendant's violation of Section 5 of the FTC Act constitutes negligence *per se*.

149.   Plaintiffs and the Nationwide Class are within the class of persons that the FTC Act was intended to protect.

150.   The harm that occurred as a result of the Data Breach is the type of harm the FTC Act was intended to guard against. The FTC has pursued enforcement actions against businesses, which, as a result of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiffs and the Nationwide Class.

151.   As a direct and proximate result of Defendant's negligence and negligence *per se*, Plaintiffs and the Nationwide Class have suffered and will suffer injury, including but not limited to: (i) actual identity theft; (ii) the loss of the opportunity of how their PII is used; (iii) the compromise, publication, and/or theft of their PII; (iv) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their PII; (v) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from tax fraud and identity theft; (vi) costs associated with placing freezes on credit reports; (vii) the continued risk to their PII, which remain

in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the PII of Plaintiffs and the Nationwide Class; and (viii) future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the PII compromised as a result of the Data Breach for the remainder of the lives of Plaintiffs and the Nationwide Class.

152.   As a direct and proximate result of Defendant's negligence and negligence *per se*, Plaintiffs and the Nationwide Class have suffered and will continue to suffer other forms of injury and/or harm, including, but not limited to, anxiety, emotional distress, loss of privacy, and other economic and non-economic losses.

153.   Additionally, as a direct and proximate result of Defendant's negligence and negligence *per se*, Plaintiffs and the Nationwide Class have suffered and will suffer the continued risks of exposure of their PII, which remain in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the PII in its continued possession.

154.   As a direct and proximate result of Defendant's negligence and negligence *per se*, Plaintiffs and the Nationwide Class are entitled to recover actual, consequential, and nominal damages.

## COUNT II
### BREACH OF IMPLIED CONTRACT
### (On Behalf of Plaintiffs and the Employees Class)

155.   Plaintiffs and the Employees Class re-allege and incorporate by reference herein all of the allegations contained in paragraphs 1 through 119.

156.   Defendant required Plaintiffs and the Employees Class to provide their personal information, including names, Social Security numbers, and dates of birth, and other personal information, as a condition of their employment.  Defendant may have also required Plaintiffs and the Employees Class to provide their government-issued ID numbers, financial account numbers, credit/debit card numbers, passwords or login credentials, digital signatures, mother's maiden names, birth certificates, biometric information, and medical/health insurance information as a condition of employment.

157.   As a condition of their employment with Defendant, Plaintiffs and the Employees Class provided their personal and financial information, including but not limited to the personal information of their beneficiaries and dependents.  In so doing, Plaintiffs and the Employees Class entered into implied contracts with Defendant by which Defendant agreed to safeguard and protect such information, to keep such information secure and confidential, and to timely and accurately notify Plaintiffs and the Employees Class if their data had been breached and compromised or stolen.

45

158.   Plaintiffs and the Employees Class fully performed their obligations under the implied contracts with Defendant.

159.   Defendant breached the implied contracts it made with Plaintiffs and the Employees Class by failing to safeguard and protect their personal and financial information, including the personal information of their beneficiaries and dependents, and by failing to provide timely and accurate notice to them that personal and financial information, along with the personal information of their beneficiaries and dependents, was compromised as a result of the data breach.

160.   As a direct and proximate result of Defendant's above-described breach of implied contract, Plaintiffs and the Employees Class have suffered (and will continue to suffer) ongoing, imminent, and impending threat of identity theft crimes, fraud, and abuse, resulting in monetary loss and economic harm; actual identity theft crimes, fraud, and abuse, resulting in monetary loss and economic harm; loss of the confidentiality of the stolen confidential data; the illegal sale of the compromised data on the dark web; expenses and/or time spent on credit monitoring and identity theft insurance; time spent scrutinizing bank statements, credit card statements, and credit reports; expenses and/or time spent initiating fraud alerts, decreased credit scores and ratings; lost work time; and other economic and non-economic harm.

161.   As a direct and proximate result of Defendant's above-described breach of implied contract, Plaintiffs and the Nationwide Class are entitled to recover actual, consequential, and nominal damages.

**COUNT III**
**INVASION OF PRIVACY**
**(On Behalf of Plaintiffs and the Nationwide Class)**

162.   Plaintiffs and the Nationwide Class re-allege and incorporate by reference herein all of the allegations contained in paragraphs 1 through 119.

163.   Plaintiffs and the Nationwide Class had a legitimate expectation of privacy to their PII and were entitled to the protection of this information against disclosure to unauthorized third parties.

164.   Defendant owed a duty to its current and former employees and their beneficiaries and dependents, including Plaintiffs and the Nationwide Class, to keep their PII contained as a part thereof, confidential.

165.   Defendant failed to protect and released to unknown and unauthorized third parties the PII of Plaintiffs and the Nationwide Class.

166.   Defendant allowed unauthorized and unknown third parties access to and examination of the PII of Plaintiffs and the Nationwide Class, by way of Defendant's failure to protect the PII.

167.   The unauthorized release to, custody of, and examination by unauthorized third parties of the PII of Plaintiffs and the Nationwide Class is highly

offensive to a reasonable person.

168.   The intrusion was into a place or thing, which was private and is entitled to be private.  Plaintiffs and the Nationwide Class disclosed their PII to Defendant as part of the current and former employees' employment with Defendant, but privately with an intention that the PII would be kept confidential and would be protected from unauthorized disclosure. Plaintiffs and the Nationwide Class were reasonable in their belief that such information would be kept private and would not be disclosed without their authorization.

169.   The Data Breach at the hands of Defendant constitutes an intentional interference with Plaintiffs' and the Nationwide Class's interest in solitude or seclusion, either as to their persons or as to their private affairs or concerns, of a kind that would be highly offensive to a reasonable person.

170.   Defendant acted with a knowing state of mind when its permitted the Data Breach to occur because it was with actual knowledge that its information security practices were inadequate and insufficient.

171.   Because Defendant acted with this knowing state of mind, it had notice and knew the inadequate and insufficient information security practices would cause injury and harm to Plaintiffs and the Nationwide Class.

172.   As a proximate result of the above acts and omissions of Defendant, the PII of Plaintiffs and the Nationwide Class was disclosed to third parties without

authorization, causing Plaintiffs and the Nationwide Class to suffer damages.

173.   Unless and until enjoined, and restrained by order of this Court, Defendant's wrongful conduct will continue to cause great and irreparable injury to Plaintiffs and the Nationwide Class in that the PII maintained by Defendant can be viewed, distributed, and used by unauthorized persons for years to come. Plaintiffs and the Nationwide Class have no adequate remedy at law for the injuries in that a judgment for monetary damages will not end the invasion of privacy for Plaintiffs and the Nationwide Class.

174.   As a direct and proximate result of Defendant's invasion of privacy, Plaintiffs and the Nationwide Class are entitled to recover actual, consequential, and nominal damages.

**COUNT IV**
**BREACH OF CONFIDENCE**
**(On Behalf of Plaintiffs and the Nationwide Class)**

175.   Plaintiffs and the Nationwide Class re-allege and incorporate by reference herein all of the allegations contained in paragraphs 1 through 119.

176.   At all times during Plaintiffs' and the Nationwide Class's interactions with Defendant, Defendant was fully aware of the confidential and sensitive nature of Plaintiffs' and the Nationwide Class's PII that Plaintiffs and the Nationwide Class employed by Defendant provided to Defendant.

177.   As alleged herein and above, Defendant's relationship with Plaintiffs and the Nationwide Class was governed by terms and expectations that Plaintiffs' and the Nationwide Class's PII would be collected, stored, and protected in confidence, and would not be disclosed to unauthorized third parties.

178.   Plaintiffs and the Nationwide Class employed by Defendant provided Plaintiffs' and the Nationwide Class's PII to Defendant with the explicit and implicit understandings that Defendant would protect and not permit the PII to be disseminated to any unauthorized third parties.

179.   Plaintiffs and the Nationwide Class employed by Defendant also provided Plaintiffs' and the Nationwide Class's PII to Defendant with the explicit and implicit understandings that Defendant would take precautions to protect that PII from unauthorized disclosure.

180.   Defendant voluntarily received in confidence Plaintiffs' and the Nationwide Class's PII with the understanding that PII would not be disclosed or disseminated to the public or any unauthorized third parties.

181.   Due to Defendant's failure to prevent and avoid the Data Breach from occurring, Plaintiffs' and the Nationwide Class's PII was disclosed and misappropriated to unauthorized third parties beyond Plaintiffs' and the Nationwide Class's confidence, and without their express permission.

182.   As a direct and proximate cause of Defendant's actions and/or omissions, Plaintiffs and the Nationwide Class have suffered damages.

183.   But for Defendant's disclosure of Plaintiffs' and the Nationwide Class's PII in violation of the parties' understanding of confidence, their PII would not have been compromised, stolen, viewed, accessed, and used by unauthorized third parties.  Defendant's Data Breach was the direct and legal cause of the theft of Plaintiffs' and the Nationwide Class's PII as well as the resulting damages.

184.   The injury and harm Plaintiffs and the Nationwide Class suffered was the reasonably foreseeable result of Defendant's unauthorized disclosure of Plaintiffs' and the Nationwide Class's PII.  Defendant knew or should have known its methods of accepting and securing Plaintiffs' and the Nationwide Class's PII was inadequate as it relates to, at the very least, securing servers and other equipment containing Plaintiffs' and the Nationwide Class's PII.

185.   As a direct and proximate result of Defendant's breach of its confidence with Plaintiffs and the Nationwide Class, Plaintiffs and the Nationwide Class have suffered and will suffer injury, including but not limited to: (i) actual identity theft; (ii) the loss of the opportunity how their PII is used; (iii) the compromise, publication, and/or theft of their PII; (iv) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their PII; (v) lost opportunity costs associated with effort

51

expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from tax fraud and identity theft; (vi) costs associated with placing freezes on credit reports; (vii) the continued risk to their PII, which remain in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the PII of current and former employees and their beneficiaries and dependents; and (viii) future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the PII compromised as a result of the Data Breach for the remainder of the lives of Plaintiffs and the Nationwide Class.

186.   As a direct and proximate result of Defendant's breaches of confidence, Plaintiffs and the Nationwide Class have suffered and will continue to suffer other forms of injury and/or harm, including, but not limited to, anxiety, emotional distress, loss of privacy, and other economic and non-economic losses.

187.   As a direct and proximate result of Defendant's breaches of confidence, Plaintiffs and the Nationwide Class are entitled to recover actual, consequential, and nominal damages.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs, on behalf of themselves and Class Members,

request judgment against Defendant and that the Court grant the following:

A.  For an Order certifying the Nationwide Class and the Employees Class and appointing Plaintiffs and their Counsel to represent each such Class;

B.  For equitable relief enjoining Defendant from engaging in the wrongful conduct complained of herein pertaining to the misuse and/or disclosure of the PII of Plaintiffs and Class Members, and from refusing to issue prompt, complete, any accurate disclosures to Plaintiffs and Class Members;

C.  For injunctive relief requested by Plaintiffs, including but not limited to, injunctive and other equitable relief as is necessary to protect the interests of Plaintiffs and Class Members, including but not limited to an order:

   i.   prohibiting Defendant from engaging in the wrongful and unlawful acts described herein;

   ii.  requiring Defendant to protect, including through encryption, all data collected through the course of its business in accordance with all applicable regulations, industry standards, and federal, state or local laws;

   iii. requiring Defendant to delete, destroy, and purge the personal

identifying information of Plaintiffs and Class Members unless Defendant can provide to the Court reasonable justification for the retention and use of such information when weighed against the privacy interests of Plaintiffs and Class Members;

iv.   requiring Defendant to implement and maintain a comprehensive Information Security Program designed to protect the confidentiality and integrity of the PII of Plaintiffs and Class Members;

v.   prohibiting Defendant from maintaining the PII of Plaintiffs and Class Members on a cloud-based database;

vi.   requiring Defendant to engage independent third-party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Defendant's systems on a periodic basis, and ordering Defendant to promptly correct any problems or issues detected by such third-party security auditors;

vii.   requiring Defendant to engage independent third-party security auditors and internal personnel to run automated security monitoring;

viii.   requiring Defendant to audit, test, and train its security personnel

regarding any new or modified procedures;

ix.   requiring Defendant to segment data by, among other things, creating firewalls and access controls so that if one area of Defendant's network is compromised, hackers cannot gain access to other portions of Defendant's systems;

x.   requiring Defendant to conduct regular database scanning and securing checks;

xi.   requiring Defendant to establish an information security training program that includes at least annual information security training for all employees, with additional training to be provided as appropriate based upon the employees' respective responsibilities with handling personal identifying information, as well as protecting the personal identifying information of Plaintiffs and Class Members;

xii.   requiring Defendant to routinely and continually conduct internal training and education, and on an annual basis to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach;

xiii.   requiring Defendant to implement a system of tests to assess its respective employees' knowledge of the education programs

discussed in the preceding subparagraphs, as well as randomly and periodically testing employees compliance with Defendant's policies, programs, and systems for protecting personal identifying information;

xiv.  requiring Defendant to implement, maintain, regularly review, and revise as necessary a threat management program designed to appropriately monitor Defendant's information networks for threats, both internal and external, and assess whether monitoring tools are appropriately configured, tested, and updated;

xv.  requiring Defendant to meaningfully educate all Class Members about the threats that they face as a result of the loss of their confidential personal identifying information to third parties, as well as the steps affected individuals must take to protect themselves;

xvi.  requiring Defendant to implement logging and monitoring programs sufficient to track traffic to and from Defendant's servers; and for a period of 10 years, appointing a qualified and independent third party assessor to conduct a SOC 2 Type 2 attestation on an annual basis to evaluate Defendant's compliance with the terms of the Court's final judgment, to provide such report to the Court and to counsel for the class, and to report any deficiencies with compliance

of the Court's final judgment;

D.      For an award of damages, including actual, consequential, and nominal damages, as allowed by law in an amount to be determined;

E.      For an award of attorneys' fees, costs, and litigation expenses, as allowed by law;

F.      For prejudgment interest on all amounts awarded; and

G.      Such other and further relief as this Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand that this matter be tried before a jury.

Date: June 22, 2021                     Respectfully Submitted,

/s/ John A. Yanchunis
**MORGAN & MORGAN, P.A.**
Gregory Bosseler
191 Peachtree Street N.E., Suite 4200
P.O. Box 57007
Atlanta, Georgia 30343-1007
gbosseler@forthepeople.com


John A. Yanchunis*
Ryan D. Maxey*
**MORGAN & MORGAN COMPLEX BUSINESS DIVISION**
201 N. Franklin Street, 7th Floor
Tampa, Florida 33602
(813) 223-5505
jyanchunis@ForThePeople.com
rmaxey@ForThePeople.com

*Attorneys for Plaintiffs and the Proposed Class*

*\*pro hac vice*

## CERTIFICATE OF SERVICE

I hereby certify that on June 22, 2021, the foregoing document was filed with the Clerk by using the CM/ECF system, which will send notification to all attorneys of record in this matter.

/s/ *John A. Yanchunis*
John A. Yanchunis